534 A.2d 1066

**SIDKOFF, PINCUS, GREENBERG &
GREEN, P.C., Appellant,**

v.

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY
INSURANCE COMPANY, Appellees.**

**SIDKOFF, PINCUS, GREENBERG &
GREEN, P.C., Appellant,**

v.

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY
INSURANCE COMPANY, Appellees.**

**SIDKOFF, PINCUS, GREENBERG &
GREEN, P.C., Appellant,**

v.

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY
INSURANCE COMPANY, Appellees.**

Superior Court of Pennsylvania.

Argued April 28, 1987.

Filed Nov. 17, 1987.

Reargument Denied Jan. 11, 1988.

Neil A. Morris, Philadelphia, for appellant.

Janet W. Mason, Philadelphia, for appellee.

Before OLSZEWSKI, DEL SOLE and BECK, JJ.

DEL SOLE, Judge:

█ This appeal is taken by plaintiff-Appellant, a law firm which had entered into a contract of fire insurance with defendant-Appellee, an insurance company, from an order of the trial court denying a motion for summary judgment

by Appellant, and finding Appellee not liable. Three appeals have been filed in this matter and have been consolidated. The appeal at No. 2604 PHL 1986 and the appeal at No. 1364 PHL 1987 are from the the trial court's order of September 11, 1986, denying Appellant's petition for reconsideration. A denial of reconsideration is not subject to review on appeal. *Provident National Bank v. Rooklin*, 250 Pa.Super. 194, 378 A.2d 893 (1977). Therefore, we quash these two appeals. Furthermore, for the reasons expressed herein, we find that Appellant's third appeal, filed at No. 1582 PHL 1987 is untimely and consequently should also be quashed.

Appellant had business fire insurance with Penn National. Appellant alleges that Appellee has breached its agreement by refusing to pay a portion of Appellants claim for losses incurred in connection with a fire in its offices. Appellant filed suit against Penn National, and upon completing discovery filed a motion for summary judgment, contending that based on the provisions of the policy and the undisputed facts, Appellee was liable for the unpaid portion of the claim.

In an order dated June 25, 1986, the trial court denied the Appellant's motion for summary judgment and found Appellee not liable. This was a final order granting summary judgment in favor of Penn National. It is well established that an order granting summary judgment is final and appealable, and once summary judgment is granted, an appeal must be filed, if at all, within 30 days. *Progressive Home Federal Savings and Loan Association v. Kocak*, 359 Pa.Super. 120, 518 A.2d 808 (1986). *Burkhart v. Brockway Glass Co.*, 352 Pa.Super. 204, 507 A.2d 844 (1986); Pa.R.A.P. 903(a).

Apparently, Appellant was under the misconception that although this June 25th order was a final one, the appeal period would not begin to run until the order was reduced to judgment and docketed. Accordingly, Appellant's filed a praecipe to enter judgment pursuant to Pa.R.C.P. 227.4(2)

on June 3, 1987, and filed an appeal from this judgment on June 4, 1987.

Our Supreme Court held in *United States National Bank in Johnstown v. Johnson*, 506 Pa. 622, 487 A.2d 809 (1985), that an order sustaining the preliminary objections in the nature of a demurrer of the appellee, and dismissing appellee as a defendant to appellant's action, was a final and appealable order, and such an order does not need to be reduced to judgment in order to be appealed. Admittedly, this Supreme Court case was dealing with preliminary objections, but generically, as in the case *sub judice* we are dealing with orders entered by the court which terminate litigation.

In *Progressive Home Federal Savings and Loan, supra,* this Court held that the trial court's docketed order which granted summary judgment for the plaintiff was a final and appealable order, requiring the appellant to file an appeal within 30 days of the order. No further action was required to make the order final and appealable. The June 25, 1986 order herein, docketed on July 2, 1986, is also an order granting summary judgment which consequently terminated the litigation. Therefore, Appellants had 30 days after the entry of the summary judgment on July 2, 1986 to appeal. Appellants' praecipe to enter judgment pursuant to Pa.R.C.P. 227.4(2) on June 3, 1987 was a meaningless act because the order was already final. *Id.*

Because the appeal from the summary judgment was filed on June 4, 1987, almost a year after the entry of summary judgment for the defendant, the appeal is untimely and must be quashed.

BECK, J., files a concurring and dissenting opinion.

BECK, Judge, concurring and dissenting:

I concur with the majority's quashing of the appeals at Nos. 2604 PHL 1986 and 1364 PHL 1987, which were filed by the appellants from the trial court's order of September 11, 1987, denying its petition for reconsideration. However,

it is my opinion that the appellant's third appeal, filed at No. 1582 PHL 1987 is timely.[1] Therefore I would consider the merits of the order of the trial court denying a motion for summary judgment by appellant Sidkoff, Pincus, Greenberg & Green, P.C. ("Sidkoff"), and finding appellee-defendant Pennsylvania National Mutual Casualty Insurance Company ("Penn National") not liable.

Sidkoff carried business fire insurance with Penn National. Fire damaged Sidkoff's office suite which it leased from Penn Mutual ("landlord"). The damage included damage to an acoustical ceiling which landlord had originally installed. Following the fire, Sidkoff admitted that one of its employees negligently caused the fire by running a fan overnight. The fan malfunctioned. Landlord demanded that Sidkoff replace the damaged ceiling at its expense, and Sidkoff requested coverage from Penn National. Penn National denied coverage for damage to the ceiling amounting to $75,869.85, although it paid Sidkoff approximately $125,000 for other damage caused by the fire.

Sidkoff brought suit against Penn National, completed discovery, and moved for summary judgment. The trial court denied Sidkoff's motion for summary judgment, finding Penn National not liable for coverage for the ceiling:

This Court having reviewed the pleadings, depositions, exhibits finds as a matte[r] of law that plaintiff and defendant agreed that no liability should rest upon defendant in accordance with section II, E 4 of the parties['] insurance contract which provide[s] for exclusions of liability . . .

1. The order on appeal, although unclear, is a de facto summary judgment order which does not state that judgment is entered, but rather finds sua sponte that defendant is not liable. This case is therefore unlike the Superior Court cases cited in the majority which do not present the issue of an unclear summary judgment order. Since the instant order is unclear, it would be unfair to deny appellant review of the merits. I do not believe our Supreme Court intended *United States National Bank in Johnstown v. Johnson*, 506 Pa. 622, 487 A.2d 809 (1985) to eradicate the "entry" language in Pa.R.App.P. 903(a) and to apply generally to all cases terminating litigation.

Accordingly, since plaintiff entered into a lease agreement with landlord Penn Mutual for the latter to install specific acoustical tiles, the nature of which were fixtures; this Court finds defendant is not liable for the resulting loss and/or damage.

Given the sophistication of plaintiff, a law firm and defendant, we will not rewrite the contract of insurance to impose liability where none was intended. *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974).

At this juncture, the trial court did not dismiss the case. The court denied summary judgment to the plaintiff-appellant Sidkoff and found defendant-appellee Penn National not liable. The effect of the court's order was to grant summary judgment in favor of Penn National. Therefore, for purposes of appellate review on the merits, we must treat Penn National as though it were the party which moved for summary judgment and prevailed.

On appeal, Sidkoff raises the following issues: did the trial court err in (1) entering judgment in favor of Penn National, (2) holding that a contract exclusion clause in the insurance policy is applicable, (3) overlooking the extent of Sidkoff's coverage, under its policy of insurance, for fire damage to fixtures, and for replacement costs for business personal property, and (4) failing to enter summary judgment in favor of Sidkoff.

I would find that the trial court erred in holding as a matter of law that Penn National was not liable. Since I would find that summary judgment was improperly entered, I would reverse.

It is well established that a motion for summary judgment may properly be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R. C.P. 1035(b), *Huffman v. Aetna Life & Cas. Co.*, 337

Pa.Super. 274, 486 A.2d 1330 (1984), *Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108, 109 (1983).

In the case sub judice, the trial court interpreted the contract and found as a matter of law that the exclusion precluded coverage. The interpretation of a contract of insurance is a question of law to be decided by the court. *Gonzalez v. United States Steel Corp.*, 484 Pa. 277, 398 A.2d 1378 (1979), *Adelman v. State Farm Mut. Auto. Ins. Co.*, 255 Pa.Super. 116, 386 A.2d 535 (1978). Therefore, I consider whether the trial court erred in its interpretation of the contract.

The trial court bases its decision on section II, coverage E of the policy (Business Liability) and refers to an exclusion clause applicable to that section. However, I note that Sidkoff's claim of coverage relies not only on the Business Liability clause but also on the Business Personal Property clause. The court did not consider the Business Personal Property clause as an alternative provision for Sidkoff's coverage.

As to the Business Liability clause, Sidkoff relies on one provision within this coverage to assert Penn National's liability:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage or personal injury caused by an occurrence to which this insurance applies.

> FIRE LEGAL LIABILITY: The Company will also pay on behalf of the insured all sums which the insured shall become legally obligated to pay for property damage to structures rented to or occupied by the named insured, including fixtures permanently attached thereto if such property damage arises out of fire or explosion. The total liability of the Company for all damages as a result of any one fire or explosion or a series or combination of such fires and explosions shall not exceed $50,000 for each occurrence.

Penn National asserts that the trial court correctly construed the policy when it held that this provision is not applicable because of the "other contract" exclusion. Sidkoff asserts that the trial court erred in holding that the "other contract" exclusion was applicable.

Under Coverage E, this policy does not apply:

4. to liability assumed by the insured under any contract or agreement except a contract as defined in this policy:

This exclusion precludes coverage unless the contract in which the insured assumes liability qualifies according to the policy definition of "contract." The definition of those contracts for which the insurance company assumes liability is:

contract means any written contract or agreement wherein the named insured has expressly assumed liability for damages to which this policy applies, provided that such liability shall not be construed as including liability under a warranty of the fitness or a quality of the named insured's products or a warranty that work performed by or on behalf of the insured will be done in a workmanlike manner:

I must therefore examine the lease to determine if the court correctly concluded as a matter of law that the exclusion was applicable.

I conclude that the court erred in concluding that as a matter of law the exclusion was applicable. Rather I would find that the exclusion clause is ambiguous, and therefore the order which in effect granted summary judgment to Penn National must be reversed. In analyzing the nature of those contracts which under the policy give rise to coverage, I examine the policy language quoted above.

The lease meets the first prong of the policy definition of "contract" for which the insurance company provides coverage in that it is a "written contract or agreement." However, it is not clear whether the lease meets the second criteria in the next phrase of the definition because the language in the definition is ambiguous. The phrase, "wherein the named insured has expressly assumed liability

for damages to which this policy applies," is unclear and is unexplained.

Sidkoff focuses on the words, "expressly assumed liability," and claims that it expressly assumed liability in its lease for damages resulting from its misuse or negligence, which it claims caused the damage to the ceiling tiles. In paragraph fifteen of the lease, Sidkoff agreed to repair fixtures damaged by its employee's negligence. Sidkoff's claim that the negligence of its employee caused the fire and damage is supported by an affidavit (by Pincus) and the testimony of the landlord facilities manager. Penn National presented no evidence to controvert Sidkoff's evidence of negligence. Sidkoff asserts that since it expressly assumed liability in the several provisions of the lease and since its employee was negligent and caused the fire, the definition of contract in the policy triggering coverage is satisfied, and the exclusion clause is inapplicable.

Penn National relies on the language of the contract exclusion clause and relevant definitions within the policy in its argument that the exclusion applies.

Since the policy is ambiguous as to whether the exclusion applies, the court was in error when in effect it granted summary judgment in favor of Penn National, and it found as a matter of law that the exclusion applied to the Business Liability provision.

Sidkoff also claims coverage under the Business Personal Property clause. The trial court did not consider this clause in finding that Penn National was not liable. The relevant provisions in the Business Personal Property clause are found in Section I, Coverage B: [2]

> This policy covers replacement cost of the Business Personal Property owned by the insured, usual to the occupancy of the insured, at the premises described in the Declarations for which a limit of liability is shown, including:

**2.** The exclusion clause referred to above is not applicable to the Business Personal Property provisions.

1. similar property held by the insured and belonging in whole or in part to others but not exceeding the amount for which the insured is legally liable, including the value of labor, materials, and charges furnished, performed or incurred by the insured; and

2. tenant's improvements and betterments, meaning the insured's use interest in fixtures, alterations, installations or additions comprising a part of the building occupied but not owned by the insured and made or acquired at the expense of the insured, exclusive of rent paid by the insured, but which are not legally subject to removal by the insured.

In assessing Penn National's liability, I would direct the trial court to consider the Business Personal Property clause as well as the Business Liability clause.

Sidkoff next contends that the trial court erred in not granting summary judgment in favor of Sidkoff. Since I would find ambiguity in the policy, I believe Sidkoff is not entitled to summary judgment.